### Van Wyck *vs.* Seward and others.

A verdict for the defendant and judgment thereon in an ejectment suit, previous to the revised statutes, brought for the recovery of lands alleged to have been fraudulently conveyed to the defendant, is not a bar to a subsequent suit in chancery against him to set aside the conveyance on the ground of fraud.

The doctrine of estoppels, as a mere technical rule, is not favored in courts of equity; and where there is no estoppel at law, the court of chancery will not resort to it to deprive a party of his rights. But the verdict of a jury in an ejectment suit, between the same parties, and upon the same question, is proper to be taken into consideration in determining a doubtful question of fact in a subsequent suit in chancery ; and it may be a sufficient reason for refusing to award a feigned issue in a case where an issue would otherwise have been proper.

The mere fact of an existing indebtedness, does not render a voluntary conveyance absolutely fraudulent, or void in law, as against the creditors whose debts were previously contracted, if there was no intention on the part of the grantor to delay or defraud his creditors.

Where a parent makes an advancement to his child, and honestly and fairly retains in his hands sufficient property to pay all his debts, such child will not be bound to refund the advancement, for the benefit of the creditors, although it should afterwards happen that the parent does not pay his debts which existed at the time of the making of such advancement. But where the debtor makes a voluntary conveyance of his property, without any valuable consideration, and for the purpose of defrauding creditors, it seems that a court of equity may follow the property into the hands of the voluntary donee, for the benefit of such creditors, although the donee was not privy to the intended fraud.

This case came before the chancellor upon appeal. The facts upon which the decison was founded will appear by an examination of the report of a previous suit at law, and the report of this case before the vice chancellor. *(See 5*

*Cowen's Rep.* 67; 8 *Idem,* 406 ; *and* 1 *Edward's Chancery Rep.* 327.)

*D. B. Tallmadge & S. Sherwood,* for the complainants. The verdict and judgment in the action of ejectment, were no bar to this suit. The conveyance of the farm from Seward senior, to Philander Seward ; the gift of all his personal estate by said William to Philander, and the transfer of Philander's bonds by Seward senior, to Rebecca Swartwout and Electa Dodge, were voluntary conveyances and gifts, without a valuable consideration, and void as to the appellant ; or, if not void, the property conveyed became a trust fund for the payment of the debts of Seward senior. When the conveyances and gifts were made, the appellant was a creditor of Seward senior. (1 *R. L. of* 1813, *p.* 75, § 2. *Jackson* v. *Seward,* 8 *Cowen,* 71. *Jackson* v. *Myers,* 18 *John. R.* 425. *Fox* v. *Hills,* 1 *Day's Conn. Rep.* 295. *Wilcox* v. *Fitch,* 20 *John. R.* 472. *Rob. on F. Con.* 1, *Note a.* 459.) The conveyances and gifts being voluntary, were, as to the appellant, *absolutely void in law.* (*Jackson* v. *Seward,* 5 *Cowen,* 87. *Reade* v. *Livingston,* 3 *J. C. R.* 481. *Backhouse* v. *Jett,* 1 *Brockenb. R.* 500. *Hopkirk* v. *Randolph,* 2 *idem,* 138. *Bullard* v. *Briggs,* 7 *Pick.* 533. *Bennett* v. *Bedford Bank,* 11 *Mass. R.* 421. *Ridgeway* v. *Underwood,* 4 *Wash. C. C. R.* 137. *Sexton* v. *Wheaton,* 8 *Wheat.* 229. 2 *Hovenden on F.* 74, *and cases cited. Twine's case,* 3 *Rep.* 80.) If they were not absolutely invalid, they were at least *prima facie* fraudulent and void as to creditors. (*Seward* v. *Jackson,* 8 *Cowen,* 406. *Jackson* v. *Peck,* 4 *Wendell,* 300. *Jackson* v. *Timmerman,* 7 *id.* 436. *Wood* v. *Jackson,* 8 *id.* 25. *Hinde's lessee* v. *Longworth,* 11 *Wheat.* 213. *Hopkirk* v. *Randolph,* 2 *Brock. R.* 136. *Taylor* v. *Jones,* 2 *Atk.* 600. *Townsend* v. *Windham,* 2 *Ves. sen.* 11. *Partridge* v. *Gopp, Ambler,* 594.) There is nothing in this case to rebut this *prima facie* evidence of fraud. (11 *Wheat.* 213, *cited before.* 8 *Cowen,* 406, *id.* 4 *Wendell,* 303, *id. Salmon* v. *Bennett,* 1 *Day's Conn. R.* 547. 2 *Brock. R.* 137 *to* 146, *cited before. Cathcart* v. *Robinson,* 5 *Pet. R.* 279.)

1836.

Van Wyck
v.
Seward.

The property bid in by Van Wyck on the executions against Seward junior, can not now be questioned : nor can the respondents deny that the covenant of Seward senior, was broken. The *recovery on the covenant,* bars any further inquiry. The sales were in fact fair. If not fair, the remedy was by a bill charging fraud ; not by answer in this case. Whether fair or not, is not a question *at this time.*

*J. Tallmadge & D. B. Ogden,* for the defendants. The deed in question from William Seward is not fraudulent and void, as against the complainant. At the time of its execution, there was no debt due from William Seward to the complainant, and it was dependant upon a contingency whether there ever would be any due. The deed was given partly on a good, and partly for a valuable consideration. At the time it was executed, there was no intention to defraud the complainant.

The verdict and judgment in the action of ejectment are a bar to this suit. (*Seward* v. *Jackson,* 5 *Cowen,* 406. *Hinde's lessee* v. *Longworth,* 11*th Wheaton's Reports,* 199. 2 *Kent's Comm.* 440, 441, 442, 443, *and the cases there cited.* 1 *Story's Comm. on Equity,* 351. *Aslin* v. *Parkin,* 2 *Burr.* 668.)

THE CHANCELLOR. This is an appeal from a decree of the vice chancellor of the first circuit, dismissing the complainant's bill with costs. The evidence in this case is substantially the same as that which was introduced when the question as to the validity of the conveyance from William Seward to his son Philander was brought before a jury in the ejectment suit for the same premises. I cannot agree with the vice chancellor in the opinion expressed by him in this cause, that the verdict of the jury in the ejectment suit, brought by the complainant for the recovery of the same property, is a conclusive bar to a bill filed in this court to set aside the conveyance to Philander Seward, on the ground that it was fraudulent and void as against creditors. The decision of the court of dernier resort, upon

1836.

Van Wyck
v.
Seward.

the question of law which was presented to that court in the former suit, is indeed binding upon all inferior tribunals. It is, therefore, conclusively settled, that the mere fact of an existing indebtedness, does not render a voluntary conveyance, from a parent to his child, absolutely fraudulent and void in law, as against the creditors whose debts were contracted previous to such conveyance, where no intention existed on the part of the grantor to delay or defraud his creditors. But the doctrine of estoppels, as a mere technical rule, is not favored in any court, especially in courts of equity. And where there is no estoppel at law, this court will not resort to a technical rule which does not exist at law, to deprive a party of his rights. It was well settled, that an ejectment suit, previous to the revised statutes, might be repeated as often as a party thought fit to risk the payment of the costs. And although this court would restrain the party from proceeding with an interminable litigation, when the question had been decided the same way by repeated verdicts, I am not aware of any case in which this court has held a party concluded by a single verdict in an ejectment suit.

But although I cannot agree with the vice chancellor in his opinion as to the effect of the judgment in the ejectment suit, as a bar to the relief sought by this bill against the defendant Philander Seward, there is no doubt but that the verdict, which was given in that case, is proper to be taken into consideration in determining a disputed question of fact, as to the existence of actual fraud in giving the deed. And where the testimony leaves it doubtful, whether there was or was not fraud in the case, the fact that the same question had been submitted to a jury, who had found that there was no fraud, certainly ought to have some influence with the court, or with another jury, in determining the same question in another suit between the same parties. And in this court it might be a sufficient reason for refusing to award a feigned issue, in a case which would otherwise have been a proper case for an issue to determine the question of fraud.

Independent of the verdict in the former case, however, which I do not place much reliance upon, as the question of fraud was never, in fact, submitted to the consideration of the jury, I think the complainant has failed in showing that William Seward had an intention to defraud the complainant by this voluntary settlement of his property, which took place before it was ascertained that the judgment against William Seward, the younger, could not be collected out of the property upon which it was a lien. The object of the complainant in getting the assignment of the judgment against William Seward, the younger, was, unquestionably, for the purpose of controlling it in such a manner as to secure his own demand against the same party without a sacrifice. And I think the evidence shows, most conclusively, that the property upon which the assigned judgment was a lien, if sold for any thing like its fair cash value, would have been sufficient to satisfy the whole amount of that judgment. The complainant, perhaps, had the technical right to put up the property for sale upon the execution, and bid it in for a nominal sum if no bidders attended to run it up to its fair value, and then to hold William Seward, who had guaranteed the collection of the judgment, liable for the deficiency. But must we presume that William Seward anticipated that such a course of proceeding would have been adopted by the complainant; and hold his settlement of his property among the different members of his family who had claims upon his bounty, fraudulent for that reason? If there was ample property bound by the lien of the judgment to pay the debt, at the fair cash value, and the guarantor had no reason to believe he would be charged with any thing under his guaranty, that is sufficient to rebut all presumption of fraud. Under the circumstances of this case, I do not believe the complainant would have permitted a stranger to bid in the property bound by the assigned judgment at the amount due thereon; leaving his own subsequent judgment unpaid. The assignor, therefore, could not reasonably have anticipated the events which afterwards occurred.

Again ; W. Seward, the elder, at the time he made the voluntary conveyance of the farm to his son, and settled a portion of his estate among his children, did not divest himself of the means of paying any probable loss which might accrue upon the judgment, even if he could reasonably have anticipated such a loss. The conveyance to the defendant, Philander Seward, of the farm, was made on the 16th of April, 1818, at which time his father still held and retained in his own hands the complainant's two bonds, one for $2000, payable in November, 1818, and the other for $902,-75, payable in November, 1819. This was an ample fund to meet any possible loss which could arise upon the judgment, as these two bonds constituted the whole consideration of the assignment. It is not material to inquire what became of the money paid by the complainant upon the $2000 bond, in November, 1818, as there is no pretence that it came into the hands of any of the defendants in this suit. It is sufficient for them to show that the disposition which W. Seward made of his property among his children, in April, 1818, was a fair and reasonable family settlement with reference to his and their situation, and that he retained still in his hands the complainant's two bonds, which were enough to pay all his debts in any possible contingency.

I can see no good reason in this case, if there was no intended fraud on the part of the father in making this settlement of his estate, for depriving his two daughters, who are made defendants, of the amount due to them on the bonds of Philander Seward. I presume it cannot be seriously urged that where a parent makes an advancement to his child, honestly and fairly retaining in his own hands at the same time property sufficient to pay all his debts, such child will be bound to refund the advancement for the benefit of creditors, if it afterwards happens that the parent either by misfortune or fraud, does not actually pay all his debts which existed at the time of the advancement.

Where a parent makes a voluntary gift or conveyance of his property without any valuable consideration, and for the purpose of defrauding creditors, equity may well follow it

into the hands of the donee, for the benefit of the creditors, although such donee was not privy to the intended fraud. But I have already satisfied myself that this is not such a case. Although the complainant had a technical right to keep all the property bid in under the judgment, and to hold the assignee liable for the deficiency, it would be requiring too much of a court of equity to ask it to lend its aid to strip the children of the assignor of the advancements which he had honestly made to them out of his estate, when he had ample means for making such advancements without the risk of doing injustice to any of his creditors.

The conclusion at which I have arrived, therefore, is, that there is no foundation for this suit as against either of the defendants ; and that the decree of the vice chancellor, dismissing the bill, should be affirmed, with costs.(a)

(a) The decree of the chancellor in this case was affirmed, on appeal to the court for the correction of errors, in December, 1837.