JohnsoN, C. J. This case is brought into this court to reverse the decision of tire Circuit Court, in overruling the plaintiff’s motion for a new trial. The errors assigned are: first, that the Circuit Court refused to give the second instruction moved by the plaintiff: second, That said court gave the instructions asked for by the defendant: and third, That said court overruled the motion of the plaintiff for a new trial. We will now consider these several points in the order stated in the assignment. The second instruction moved by the plaintiff is, “That if the jury believed, from the evidence, that Dodd had uninterrupted possession of said negro in right of his wife, claiming her as his own from the time of his marriage on the 13th day of Feb’y, A. D. 1840, until she was levied upon by the sheriff, on the 21st day of March, A. D. 1845, and that he so held possession between those periods for the term of five years; that by law such possession for five years vested in Dodd the absolute title of ownership of said negro, as against said Humphries and those claiming under him by execution or purchase, and made her subject to his debts, capable of being sold and conveyed by him, and that such possession vested the title and ownership of said negro in Dodd, independent of the gift from Humphries to his daughter.” This instruction was refused by the Circuit Court, and we presume upon the ground that it was regarded as a mere abstract proposition, and not authorized by the law, upon the state of facts as detailed before tire court. The proof was clear that Dodd took possession of the negro at the time of his marriage, and that he retained it until she was taken from him by the sheriff, under an execution against Humphries. The marriage took place on the Í3th of February, A. D. 1840, and the execution was levied on the 21st of March, A. D. 1845. The point now to be determined is, whether the Statute of limitations ceased running in Dodd’s favor, upon the receipt of the execution by the sheriff, or continued so to run until tbe actual levy of the execution. If the former, the space of five years, the Statute bar, had not elapsed; but if the latter, it had, and the title to the property was absolutely vested in the plaintiff. The 24th sec. of chap. 60, in the Revised Code, , declares that “no execution shall be a lien on the property, in any slaves, goods, or chattels, or the rights, or shares in any stock, or on any real estate, to which the lien of die judgment, order or decree does not extend, or has been determined, but from tire time such writ shall be delivered to the officer in the proper county to be executed.” The sense in which, and the extent to which, goods can be said to be bound, by the delivery of the writ of execution to the sheriff, is, that it binds the property as against the party himself, and all claiming by assignment from, or representation through or under him; but it does not so vest the property in the goods absolutely, as to defeat the effect of a sale thereof made by the sheriff under an execution. This was settled in the case of Smallcomb v. Cross, and Buckingham and another, sheriff of London. (Ld. Raym. 252. S. C. Salk. 320, and Comyns 35.) That was the case of a sale by the sheriff under a second writ offieri facias, the former fieri facias, which was first delivered tó the sheriff, not having been then executed. And it was an action of trover brought by the plaintiff in the last delivered fieri facias, which was so first executed, against the sheriff, and the plaintiff in the first delivered fieri facias, which was executed by the sheriff, and the goods sold again, after the goods had been already sold under the last delivered writ. Lord Holt, in delivering the judgment of the court for the plaintiff, (according to the report in Comyns, which agrees with the other reports of the same case), “declared their reasons to be, for that at common law, if there were two writs of fieri facias, the one bearing teste on such a day, and the other on the next day, and the last writ was first executed, such execution should not be avoided, and the party had no remedy but against the sheriff; for the sheriff ought to make execution at his peril, and the sheriff shall be excused if there was no default in him; as if he, who took the first writ out, conceals it in his hand, the sheriff may rightfully make execution on another writ which bears the last teste, but came first to his hands, and it hath been held, that if a recognizance be extended, the executor ought to satisfy that before a judgment not prosecuted, and, therefore, in the present case, as he who brought his fieri facias to the sheriff did not desire that it might be executed, the sheriff might rightly execute the last fieri fa-cias, and such execution shall not be avoided.” All the reports of this case agree, that although, in general, the sheriff was bound to execute that writ first, that was first delivered; yet that if he do otherwise, and execute the last delivered first, that the property of the goods is bound by the sale, and the party cannot seize them by virtue of his execution first delivered, but may have his remedy against the sheriff. And the reason given in Ld. Raym. 252, is, “For sales made by the sheriff ought not to be defeated; for if they are, no man will buy goods levied upon a writ of execution.” Other cases to the same effect are to be found in 10 Vin. Air., 369, tit. Execution, A. and also Comb 145, where it is said by Holt, O. J. and Dolham, J. “That the Statute of frauds, which says, that the property of goods taken in execution shall be bound only from the delivery of the writ to the sheriff, and not from the teste thereof, is to be understood only in respect of purchasers of them.” And in Lowthal v. Tompkins, 2 Eq. Cas. Abr. 381, Lord Hardwick construes the meaning of the words, “bound from the delivery of the writ to the sheriff,” in the same manner, for he says “The meaning of the words, that the goods shall be bound from the delivery of the writ to the sheriff is, that after the writ delivered and the defendant makes an assignment of them, except in market overt, the sheriff may take them in execution.” And in a former part of the same case, Lord Hardwick says, “neither before this Statute nor since, is the property of the goods altered, but continues in the defendant till the execution executed.” We consider the expressions in the two Statutes to be substantially the same. The English Statute provides that the goods shall only be bound from the delivery of the execution to the sheriff, and that no execution shall be a lien on the property, but from the time such writ shall be delivered to the officer in the proper county to be executed. The construction given in the cases cited, is conceived to be conclusive upon the question. If the receipt of an execution by the sheriff does not operate so to divest the title as to • defeat a sale made under one subsequently received, a fortiori it could not destroy a right consummated by the mere act and operation of the law itself. We think it clear, therefore, that the mere delivery of the execution to the sheriff, did not arrest the operation of the Statute, but that it continued its course until the actual seizure. This being the case, Dodd’s title became fixed and perfect, and the levy and sale, afterwards, cannot affect his legal rights. Under this construction of the Statute it is manifest that the plaintiff was entitled to the benefit of the second instruction, and the court, having refused to give it, consequently erred. The defendant’s first instruction is in strict accordance with the law, and, therefore, was properly given. The second asked for him may be said, in some respect, to be correct, but it is believed, from its peculiar phraseology, to be well calculated to mislead the jury in regard to the law arising upon the facts of this case. The law of this instruction is sound in the abstract, but in order to meet the facts, it should further have stated that the lien created by the delivery of the execution could be defeated or destroyed by the running of the Statute of limitations, and the consummation of a title to the same property in another, after the delivery of the execution and before actual seizure by the sheriff. This instruction was, therefore, improperly given. The third instruction asked by the defendant, should not have been given. The Statute does not avoid every gift, where the possession does not accompany it. It is only in cases where the gift is not founded upon a consideration deemed good in law, that it shall be void against all creditors and purchasers. - The third error assigned is, that the Circuit Court erred in overruling the motion for a new trial. In order to test the correctness of the decision in this respect, it will become necessary to review the evidence adduced upon the trial, and to ascertain whether the verdict is warranted by it. The validity of the gift to the plaintiff’s wife has been impugned solely upon the ground of fraud, and the Statute of frauds is relied upon to defeat it. The second section of the Statute (R. S. chap. 65), declares that “every conveyance or assignment, in writing or otherwise, of any estate or interest inlands, or in goods and chattels, or things in action, or of any rents issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree, or execution made or contrived, with the intent to hinder,'delay, or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts, or demands, as against creditors and purchasers, prior, .and subsequent, shall be void:” and the 4th section of the same act, also declares that “every gift of goods, chattels, and slaves, and all other conveyances of the same, not on consideration deemed good in law, shall be void as against all creditors and purchasers, and all such gifts, grants, and conveyances, shall be void even against the grantors, unless possession really and bona fide accompany such gift or conveyance.” The first question presented here is, whether the facts and circumstances, detailed in evidence, and under which the gift was made, were such as to constitute fraud per se, or even to raise a presumption against the fairness of the transaction, y The mere fact of an existing indebtedness, does not render a voluntary conveyance absolutely fraudulent, or void in law, as against the creditors whose debts were previously contracted, if there was no intention on the part of the grantor to delay or defraud his creditors. In the case of Van Wyck v. Seward, 6 Paige 67, the chancellor said, “I presume it cannot be seriously urged that where a parent makes an advancement to his child, honestly and fairly retaining in his own hands, at the same time, property sufficient to pay all his debts, such child will be bound to refund the advancement for the benefit of creditors if it afterwards happens that the parent, either by misfortune or fraud, does not actually pay all his debts, which existed at the time of the advancement.” This doctrine is much stronger and goes to a much greater extent, than would be requisite to sustain the gift in this case. It does not appear from the testimony to what extent the donor was indebted at the time, or that in truth he owed any thing; but it appears, on the contrary, that he was unembarrassed and worth twenty thousand dollars. In the case of Salmon v. Bennet, 1 Con. Rep. 525, Swift, Ch. J., gives the opinion of the court as follows:— “Fraudulent and voluntary conveyances are void as to creditors; but in the case of a voluntary conveyance, a distinction is made between the children of the grantor, and strangers. Mere indebtedness at the time will not in all cases render a voluntary conveyance void as to creditors, when it is a provision for a child in consideration of love and affection: for if all gifts, by way of settlement to children by men in affluent and prosperous circumstances were to be rendered void upon a reverse of fortune, it would involve children in the ruin of their parents, and in many cases might produce a greater evil than that intended to be remedied. Nor will all such conveyances be valid, for then it would be in the power of parents to provide for their children at the expense of their creditors. Nor is it necessary that an actual or express intent to defraud creditors should be proved, for this would be impracticable in many instances, where the conveyance ought not to be established. But in all cases where such intent can be shown, the conveyance would be void, whether the grantor was indebted, or not. In order to enable parents to make a suitable provision for their children, and to prevent them from defrauding creditors, these principles have been adopted, which appear to be founded in good policy. Where there is no actual fraudulent intent, and a voluntary conveyance is made to a child in consideration of love and affection, if the grantor is in prosperous circumstances, unembarrassed, and not considerably indebted, and the gift is a reasonable provision for the child, according to his state and condition in life, comprehending but a small portion of his estate, leaving ample funds unencumbered for the payment of the grantor’s debts, then such conveyance will be valid against debts existing at the time. But though there be no fraudulent intent, yet if the grantor was considerably indebted and embarrassed at the time, and on the eve of a bankruptcy, or if the nature of the gift be unreasonable, considering the condition in life of the grantor, disproportioned to his property, and leaving a scanty provision for the payment of his debts, then such conveyance will be void as to creditors.” Now if we apply these principles to the facts in the case under consideration, we cannot but see that those facts afford no ground for presumption of fraud in John Humphries, the donor, at the time he made the gift to his daughter, Eliza. For at that time Humphries was in prosperous circumstances, he then paid taxes on thirty-five negroes, and was worth twenty thousand dollars, independent of his debts. This gift to his daughter was a negro child, whose value could not have exceeded one or two hundred dollars. The gift was, therefore, not unreasonable, and affords no presumption that it was made to injure or defraud creditors. If the gift to the daughter was not fraudulent in the beginning, it could not become so by subsequent events. We consider this sufficient for this branch of the case, and will, therefore, discontinue the discussion upon it. It is also objected as a circumstance against the validity of this gift, that the donee did not take immediate possession of the property. The proof is, that the gift was made some twenty years before the trial in the Circuit Court; that the donee was then an infant; that she then lived with her father, and continued to live with him until her marriage, which took place on the 13th of February, A. D. 1840. Where there are many persons living together, constituting one family, and. there are slaves in the service of the family, subject to the occasional order of each, the possession in law is considered and regarded as in those of the family, who have right to the property, and if in such ca.se an infant be the real owner and have right to the slaves, the infant will be regarded as in the possession, although the father controls and causes them to work as he pleases; and where many persons are in the enjoyment of property, be these adults or infants, in part, those who trust upon the faith of the property are bound to discriminate and ascertain at their peril, who has title among those using it. Where the gift is made t'o an infant, and the father takes possession, he holds as natural guardian, and the possession is the infant’s, and such a case is not Avilhin the Statute of frauds, so as to subject the property to the creditors of the father. This doctrine is Avell settled by the authorities. If the possession of the father, of property given to his child by a stranger, is the possession of the child, it is equally so, where the gift i's directly made by the father himself. There can be no difference in principle. So that,' upon the supposition that this was a gift without a consideration deemed good in law, and actual possession Avere absolutely necessary, the fact of the possession of the slave is fully established by the testimony in the ease. We have looked carefully through the entire evidence adduced upon the trial, and if any of the badges of fraud recognized by the law, are brought to light, it must be confessed that we have not been able to detect them. All the circumstances surrounding the parties at the time of the gift tend most strongly to rebut any presumption of fraud; and nothing is discernable in subsequent events to give rise to it. We conceive that the title of the plaintiff; by virtue of tbe gift to his wife, is, therefore, full and complete. But this is not the only ground upon which he is entitled to recover 5 for his title, as has «been shown in a previous part of this opinion, arising from his own possession since his marriage, is equally clear and indisputable. But it has been contended that fraud is a question of fact, and that it falls peculiarly within the province of the jury. To this, we answer that it is a mixed question of law and of fact to be submitted to the jury; yet like all other questions of fact, it can only be established by competent proof. Whenever a jury shall find fraud and that without such evidence as shall be sufficient to establish it, or without any , evidence whatever indicating it, we consider it not only within the province, but even the imperative duty of this court, to set it aside. We do not conceive that we are called upon to set aside the verdict in this case for a mere preponderance of testimony, but for the fact drat it is so manifestly against the evidence as, at first blush, to shock our sense of justice and right. But it is contended by the defendant, that, although die merits of the case should be in favor of the' plaintiff, yet he cannot recover, as the facts are not such as to enable him to support the form of action which he has adopted. It has been held in Pennsylvania, that, although replevin was prohibited by a Statute of the Legislature to be brought against a sheriff, who has taken goods in execution, yet, that after the sale, a person claiming property in the goods might maintain this action against the sheriff’s vendee. 6 Binn. 2. It was also held in New York, that, although the defendant in the execution could not himself maintain replevin, yet, that the action might be brought by a third person against the sheriff; for, if an officer having an execution against A., undertook to execute it upon goods in the possession of B., he assumes upon himself the responsibility of showing that such goods were the property of A., and if he fail to do this, he is a trespasser by taking them. Thompson v. Button, 14 Johns. Rep. 84. We are clear, therefore, from a full and patient investigation of the whole case, that the Circuit Court erred in overruling the plaintiff’s motion for a new trial. Judgment reversed.