DUNLAP v. HAWKINS, appellant.

*Voluntary deed — when not fraudulent — continuation of indebtedness — making up case.*

H., being in debt, purchased real estate and caused the title to be taken in his wife's name. At the time, he was indebted in the amount of $6,400, and owned property worth $9,700, independent of the amount paid for the real estate. *Held,* that the conveyance to the wife was not fraudulent as to the creditors of H.

A note was paid when it became due with the proceeds of another note, made and indorsed by all the parties to the first note. *Held,* that it was a continuing indebtedness; the debt secured by the first note was not paid, but merely transferred.

Manner of making up case commented upon.

APPEAL from a judgment in favor of the plaintiff, in an action to obtain satisfaction of a judgment out of real estate claimed to be conveyed to the judgment debtor's wife, in fraud of his creditors. The facts appear in the opinion.

*Tucker & Bowen,* for appellants.

*Oscar Craig,* for respondent.

MULLIN, P. J. This was a creditor's suit brought to obtain satisfaction of a judgment recovered by the First National Bank of Lockport against Elijah W. Hawkins and others, for $3,234.89 damages, and $26.77 costs, docketed in the clerk's office of Niagara county, on April 20, 1865, out of land alleged to have been fraudulently conveyed by the judgment debtor to the defendant.

This judgment was recovered on a note made by William W. Baker for $3,150, payable to the order of Alden S. Baker, Jr., sixty days after date, at the Bank of Commerce, in the city of New York, and indorsed by said Alden S. Baker, Jr., Elijah W. Hawkins, Isaac Wickham and John T. Murray. Judgment was entered against the maker and all the indorsers, except Murray.

An execution was issued on that judgment to the sheriff of Niagara county against Hawkins, W. H. Baker and A. S. Baker, Jr., and he returned the same unsatisfied as to the defendants. Hawkins and all the indorsers prior to him were, at the commencement of this action, insolvent.

The judgment was assigned by the bank to the plaintiff in this action.

In August, 1863, Elijah W. Hawkins, the husband of the defendant, purchased of one Eliza F. Case a piece of land in the town of Newfane, in the county of Niagara, paid the consideration for the same, and caused a deed from Mrs. Case, for said farm, to be executed and delivered to the defendant, his wife, she paying therefor no consideration whatever.

Mrs. Hawkins subsequently sold this farm, and invested its proceeds in another, situate in the town of Hartland, in the county of Niagara, the title to which she held at the commencement of this suit. The defendant had no separate property when the land in Newfane was conveyed to her.

When that conveyance was made (August 1st, 1863), Hawkins,

the husband, was indebted on a note for $3,000, made by said W W. Baker, and indorsed by Wickham, Hawkins and Murray, and dated the 30th of June, 1863, and payable on the 1st of September, 1863.

This note was paid by the proceeds of another note, dated the 29th of August, 1863, payable on the 31st of October of the same year, made and indorsed by the same parties, and for same amount.

That note was paid by proceeds of a note made and indorsed by the same parties, and for the same amount, dated the 31st of October, and payable the 3d of December, 1863.

This note was paid by the proceeds of a note made and indorsed by the same parties, for the same amount, dated the 1st of December, 1863, payable the 2d of February, 1864.

This note was paid by proceeds of two notes for same amount, made by same maker, and indorsed by A. S. Baker, Jr., and the indorsers above named, one of which notes was dated the 30th of January, 1864, and the other the 1st of February of the same year, both payable 1st and 4th of April of same year.

These notes were paid by proceeds of a note for $3,100, made and indorsed by the parties last above mentioned, dated 1st of April, and payable 3d of June, 1864.

This note was paid by proceeds of a note for same amount, made and indorsed by same parties, dated 31st May, and payable 2d August, 1864.

This note was paid by proceeds of another note of same amount, made and indorsed by the same parties, dated 30th of July, and payable 1st of October, 1864.

This note was paid by proceeds of a note for $3,150, made and indorsed by the same parties, dated 1st of October, and payable on the 3d of December, 1864.

This is the note on which the judgment, described in the complaint in this action, was recovered.

It will be seen from this statement that all the notes subsequent to the first were dated before the prior notes became due, except two, and these were dated on the same day the prior notes matured.

So that there was no day from the 30th of June, 1863, until the 1st of October, 1864, when Hawkins was not liable on a note for at least $3,000.

W. W. Baker gave, or caused to be given, to Hawkins, security for his liability as indorser for him. Part of this security was a farm

of land, known as the Harrington farm. This farm was sold and the proceeds applied on judgments against Hawkins and others, secured on paper indorsed by them. Some personal property on said farm was mortgaged to Hawkins as security for his liabilities as indorser. On the sale of the Harrington farm, this personal property was also sold to the same purchaser, and Hawkins discharged his mortgage.

The judgment on which this action is brought was by agreement between the parties not paid out of the proceeds of the Harrington farm, but was purchased by the plaintiff, under an agreement between him and Murray, that he *would* purchase and hold said judgment for a year, in consideration of which Murray guaranteed the payment thereof.

Plaintiff took an assignment of the judgment under said agreement, and, subsequently, and in 1868 an execution was issued upon it; property of the defendants therein, except Wickham, who had died, was levied on. It was afterward returned *nulla bona*.

An execution had been previously issued, and considerable personal property levied on, but it was never recovered, and the levy was abandoned.

The referee to whom the issues were referred held the conveyance to the defendant of the land in Newfane fraudulent as against the creditors of her husband, and that the land purchased by her with the proceeds of said land was liable to said creditors, and he ordered the farm to be sold, and plaintiff's debt and costs paid out of the proceeds.

The conveyance from Mrs. Case to the defendant having been procured by Hawkins, the husband, must be treated as if made by himself. It was, therefore, a voluntary conveyance and fraudulent as against the creditors of Hawkins, whose debts existed at the time of such conveyance, unless he retained in his hands property enough to *pay* all such creditors. *Van Wyck* v. *Seward*, 6 Paige, 62; *Jackson* v. *Post*, 15 Wend. 588; *Phillips* v. *Wooster*, 36 N. Y. 412; *Bank of U. S.* v. *Housman*, 6 Paige, 526.

Unless the conveyance procured to be made by Hawkins to the defendant was fraudulent as against creditors, because it was voluntary, there is no proof in this case authorizing the referee to find it fraudulent.

In order to determine whether H. retained in his hands sufficient means to pay the debts owing by him at the date of the deed to the

defendant, it is necessary to ascertain the amount of debts then owing by him and the value of the property retained in his hands.

Hawkins was indebted on the 1st of August, 1863, the date of the deed to his wife, on the note of June 30, 1863, being the first of the series of notes hereinbefore set forth, the last of which was the note on which the plaintiff's judgment was recovered, mentioned in the complaint. It is probable that he was also indorser for Baker in the summer of 1863, to the amount of $2,000 more, but he testifies that his whole liability in the summer of that year did not, according to his recollection, exceed $4,000, and might not exceed $3,000. In July, 1863, Hawkins was liable as a joint maker of a note for $400, payable to A. S. Delavan six months from date, and upon another note for $1,000, payable in one year from date, and dated the 6th of July, 1863. These several debts amounted to $6,400.

The defendant's counsel insists that the indebtedness upon the note of the 30th of June, 1863, and which did not become due until the 1st of September of that year, ought to be deducted from Hawkins' liabilities, as that note was paid by the proceeds of the note dated the 29th of August, 1863, made and indorsed by the same parties as the prior one and for the same amount. The counsel's proposition is, that although the note was paid by the proceeds of another, made for the purpose of raising the money wherewith to pay it, the indebtedness evidenced by the first note was paid, satisfied and discharged.

I cannot assent to this proposition. All the notes, subsequent to the first, were given, either on the same day the former notes matured, or prior thereto. There was not, therefore, an instant of time when Hawkins was not liable as indorser for the sum of $3,000, being the amount of the original debt.

In the case of *Mills* v. *Morris*, Hoffman's Ch. 419, the action was brought by a creditor whose debt was contracted subsequent to a voluntary conveyance, by the debtor, to set it aside as fraudulent against him. The plaintiff's debt was contracted about the 1st of November, 1837. In March of that year, directions were given by the debtor to an attorney, to propose a settlement of the property in controversy, in favor of Morris' wife. That instrument was not executed until September of the same year. In February, 1838, plaintiff recovered a judgment against Morris. Morris failed, as the assistant vice-chancellor held, at the last-mentioned date.

When the settlement was made, he owed about $40,000, and about the same amount when he failed.

All the debts he owed when he made the settlement were paid off, but they were paid by contracting new debts, so that his liability was not changed. The assistant vice-chancellor held the settlement fraudulent and void as against the plaintiff.

The vice-chancellor adopts the views of the Master of the Rolls, in *Richardson* v. *Smallwood*, Jacobs, 552. The Master of the Rolls says: "But suppose a person indebted, to execute a conveyance, such, that if those who were creditors at the time complained, it would be void as against them, then if they were paid off and a new set of creditors stand in their places, does that make any difference, does it not hinder and delay these creditors, and is it not void as against them? If it be not so, it would be easy to evade the statute. The party may pay off those to whom he is then indebted by borrowing of others, and he may then say to them, "I did not make the settlement to defraud you, but to defraud other persons who were my creditors!"

In *Savage* v. *Murphy*, 34 N. Y. 508, the receiver brought the action to set aside a conveyance by a debtor to his wife and children, upon the ground that it was fraudulent as against his creditors.

The court held, that the deed was recorded with intent to defraud subsequent creditors. SMITH, J., delivered the opinion of the court of appeals. After stating the facts, he proceeded to say, "the conclusion of fraud is not refuted by the circumstance that the debts owing by him (the debtor), at the time of the transfer, were paid with the proceeds of credit, subsequently acquired by the means above stated. The indebtedness then existing was merely transferred, not paid, and the fraud is as palpable as it would be if the debts were unpaid, were owing to the same creditors who held them at the time of the transfers."

Let us now ascertain how much Hawkins was worth at the time of the conveyance to his wife, after that conveyance was made. He had title to the Harrington farm, as security for his indorsements for W. W. Baker. That farm was subsequently sold for $16,100. There were liens upon it to the amount of nearly $10,000, leaving about $6,000 to be applied in discharge of the liabilities of Hawkins as indorser. He had, as further security for his indorsements, a chattel mortgage on property upon the Harrington farm that was sold with it for $700. He held notes against the Bakers

for $3,000. The Bakers, in 1863, were solvent, but afterward became insolvent.

Owing to the loose manner in which the evidence was taken, it is impossible to say, with any degree of certainty, what further amount of property Hawkins was worth in August, 1863, but it is more than probable that he was worth considerable more. He testifies that he owed no debts of his own ; that his entire indebtedness was as indorser, or joint maker of notes for the accommodation of others.

If I have correctly understood the evidence, he had in his possession, when the land was deeded to his wife, the amount of $9,700. Deducting from this his liabilities, $6,400, leaves him worth at least $3,300, over and above sufficient to pay his debts. No greater surplus could reasonably be required.

It is true, that some three years afterward the parties to the Baker notes, above mentioned, had become insolvent, and an action upon them was barred by the statute of limitations. But the inquiry as to Hawkins' pecuniary condition must be confined to the 1st of August, 1863. If he had, then, ample means to pay his debts, after conveying the farm to his wife, the validity of that conveyance cannot be made to depend upon the subsequent disposition of the property he was worth when he conveyed to his wife.

It was proved on the trial that the deed from Edmunds to the defendant, of the farm sought to be reached by the plaintiff and applied in payment of his judgment, was dated the 10th of April, 1865, and was not recorded until October, 1868.

The defendant testified that it was not kept from record with a view of defrauding any one, she did not know it was necessary to record it, and she put it in her bureau and left it there.

The referee has not found that she omitted to record the deed with a fraudulent intent, and it formed no part of the ground on which he predicated his finding, that the deed was fraudulent.

The conveyance to the defendant by her husband was not fraudulent as to the creditors of her husband, and the judgment of the referee must, therefore, be reversed.

I cannot leave this case without expressing my disapprobation of the manner the record is made up. It contains 140 pages, when all that is material in it should have been contained in one-quarter of the space.

Deeds have been presented at full length, together with the cer-

tificate of acknowledgment, and the papers offered in evidence are copies of the record. Judgment records and executions are presented in full, when half-a-dozen lines would give to the court all the information it needed in regard to them.

A case thus made imposes great and unnecessary expense upon clients, unnecessary labor upon the court, and confuses, rather than enlightens, it.

There are several interesting questions, presented by the defendant's counsel, which, in the view we take of the case, it is unnecessary to consider.

The judgment of the referee is reversed, and a new trial ordered before another referee, costs to abide event.

*Judgment reversed and new trial ordered.*