Allen, J.
The appeal is from an order of the Supreme Court reversing a judgment on the report of a referee, and granting a new trial on questions of fact as well as law, so that the whole case is before us for review. (Code, § 268.) The premises sought to be charged with the payment of the judgment against Elijah W. Hawkins, the husband of the defendant, were conveyed to the defendant upon a consideration'paid b)r the husband, and at his request. There was no evidence of fraud, or fraudulent intent to impeach the conveyance, other than the fact that it was a voluntary conveyveyance by the judgment debtor, no valuable consideration being paid therefor by the defendant. The referee has not found an actual fraudulent intent upon the part of the judgment debtor, or that the title to the premises was conveyed to the defendant, with intent to hinder, delay, or defraud creditors, and the statute declares that no conveyance or charge shall be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration. (2 R. S., 137, § 4.) The plaintiff’s claim rests exclusively upon the statute of “ uses and trusts ” (1 R. S., 728, §§ 51, 52), which enacts that when a grant for a valuable consideration shall be made to one person and the consideration therefor shall be paid by another, no trust shall result in favor of the person by whom such payment shall be made, but, the title shall vest in the alienee named in the con veyance subject only to the provision that every such conveyance shall be presumed fraudulent as against the creditors at the time of the person paying the consideration, and when a fraudulent intent is not disproved a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands. The statute makes the fact that the consideration is paid by one for a grant to another, without other evidence, presumptive proof of fraud, but does not make *346 it conclusive and casts the burden upon the grantee to disprove afraudulent intent in the defence of his title. It goes farther than the statute of frauds (2 R. S., supra), for it allows a voluntary conveyance to be impeached solely for the want of a valuable consideration moving from the grantee,- but it does not incapacitate one indebted at the time from making provision for wife or children by a conveyance from a third person upon a consideration paid by him which is but a voluntary conveyance from himself by indenture. The question in a case like the present, under the statute, is not one of fraud in-law in which the inference founded on a voluntary disposition of property while indebted would not depend on the particular circumstance, or greater or less degree of pecuniary embarrassment of the party, but is made by the statute one of fact in which the pecuniary circumstances of the party making, the grant, or as here procuring it to be made, are matters for consideration. It becomes a question of actual fraud; The statute in substance enacts the rule which appears to have the sanction of the greater weight of authority, although it cannot be denied a more stringent rule, and one that would make the fact of indebtedness at the time of a voluntary conveyance of property by the debtor conclusive - evidence of fraud, as against creditors existing at the time, has the sanction of very learned judges. Chancellor Kent seems to have deemed this the just rule as deducible from the cases, and he would only permit the- presumption of fraud to be repelled with respect to the claims of subsequent creditors. (Reade v. Livingston, 3 J. Ch., 481.) But this rule was never adopted by the Supreme Court of this State, and the weight of authority, both here and in England, is in favor of the more liberal rule which regards a present indebtedness' at the most but prima facie evidence of fraud in a voluntary conveyance to a wife or child. (Townsend v. Westacott, 2 Beav., 340; Hindes’ Lessee v. Longworth, 11 Wheat., 199, per Spencer, J.; Verplanck v. Sterry, 12 J. R., 536, per Woodworth, J.; Jackson v. Town, 4 Cow., 599; Gale v. Williamson, 8 M. & W., 405.) The doctrine seems to be *347 that a creditor cannot impeach a conveyance founded on natural love and affection, free from the imputation of fraud, and when the grantor had, independent of the property granted, an ample fund to satisfy his creditors. By proving the pecuniary circumstances and condition of the grantor, or him who pays for and procures a grant from others, his business and its risks and contingencies, his liabilities and obligations, absolute and contingent, and his resources and means of meeting and solving his obligations, and showing that he was neither insolvent nor contemplating insolvency, and that an inability to meet his obligations was not and could not reasonably be supposed to have been in the mind of the party, is the only way in which the presumption of fraud, arising from the fact that the conveyance is without a valuable consideration, can be repelled and overcome, except as the party making or procuring the grant may, if alive, testify to the absence of all intent to hinder, delay or defraud creditors.
In Van Wyck v. Seward (6 Paige, 62), it was held that the mere fact of an existing indebtedness does not render a voluntary conveyance absolutely fraudulent or void in law, as against creditors whose debts were previously contracted, if there was no intention on the part of the grantor to delay or defraud his creditors, and that when a parent makes an advancement to his child, and honestly and fairly retains in his hands sufficient property to pay all his debts, such child will not be bound to refund the advancement for the benefit of the creditors, although it should afterward happen that the parent does not pay his debts which existed at the time of making the advancement. So in Jackson v. Post (15 Wend., 588), a voluntary conveyance was held not void as against creditors, on the ground that the grantor was, at the time of the conveyance, indebted, when it was shown that the residue of the real estate of the grantor was amply sufficient to pay his debts. The same principle is recognized in Phillips v. Wooster (36 N. Y., 412) and Bank of United States v. Housman (6 Paige, 526), and expressly reaffirmed in Fox v. Moyer. (54 N. Y., 125). If there is evidence that a fraudulent use *348 was intended to be made, or was made, of the grant, it would be held void as against creditors or subsequent purchasers. (Savage v. Murphy, 34 N. Y., 508.) The judgment debtor was not, at the time of the grant to the defendant, his wife, and has not been at any time since engaged in any business involving risks and hazards of an extraordinary character, and his ability to 'pay his debts and meet his engagements has not depended upon the fluctuation of prices or of the markets or the result of speculations, and he has not, so far as the record discloses, had any occasion for credit in his own affairs, and has not obtained or had credit on the faith of the ownership of the property in question. At the time of the grant, he owed no debts of his own, but was liable as second indorser upon the promissory notes of a third person, to an amount not exceeding $4,000. One of the notes for $3,000, for which he was then contingently liable as indorser, was continued by renewal, as is claimed, and constituted the liability for which the judgment now owned by the plaintiff, and which is the foundation of this action, was recovered. I lay out of view two notes held by the plaintiff of which the judgment debtor was one of the makers, for the reason that he signed them as security for a third person for a temporary purpose, and to secure the plaintiff for certain advances until the principal debtor could perfect his title to the premises, to pay for which the advances had been made, anc] execute a mortgage thereon ns the permanent security for the debt. The mortgage had been executed and accepted, and although the notes had not been surrendered, the substituted security had been perfected, and the notes were no longer valid or subsisting obligations. Isaac Wickham was the payee and first indorser of the $3,000 note in 1863, at the time of the conveyance to the wife, and primarily liable for the debt. In addition to this, Elijah W. Hawkins, had, as security for all his indorsements and liabilities, for Baker, the maker of the note, the principal debtor, the title to a farm in Niagara county of 216 acres, of the value of, and which was sold for $16,100, subject to an incumbrance of less than $10,000. He *349 had also as a security agaiust the same liabilities, a mortgage upon personal property upon the farm, valued at that time at some §3,000, and from which was realized, under the arrangement with the plaintiff, §700. He had also claims against the Bakers secured upon the same property, and at one time secured in part by a mortgage of A. J. Baker’s house, to the amount of $3,000, besides stock and personal property on his farm, and other debts due him which the referee finds did not exceed $2,500 in value. At the time of the conveyance to his wife, the defendant, Hawkins was well secured to an amount at least twice that of his liabilities, aside from the security he had on the prior indorsement of Wickham, and had property of his own after the grant to the wife, more than sufficient in amount and value to pay his debts and liabilities. These facts clearly and conclusively repel the presumption of fraud as against creditors having debts before then contracted. The judgment in favor of the Lockport Bank of which the plaintiff became the assignee in December, 1865, more than two years after the transfer of property to the defendant, was the first lien upon the equity of redemption of the Harrington farm, the title to which was held by Hawkins as a security for his liabilities for and claims against Baker, and would have been paid from the proceeds of the sale of that farm, but for an arrangement made with the plaintiff in pursuance of which he released the land from the lien of that judgment, and consented to the application of the proceeds of the sale of that and of the personal property mortgaged to Hawkins to secure the same debt, to the payment of subsequent incumbrances, he taking as a substitute and in lieu of the securities thus released the personal obligation and guarantee of one John D. Murray. There is no evidence that the guarantor is not abundantly able to respond to any claim that may be made against him upon his undertaking. I have thus far considered the case as if the debt to the Lockport National Bank, included in the judgment recovered by that corporation in April, 1865, and assigned to the plaintiff in December thereafter, was contracted prior to July, 1863, when the convey *350 anee was made to the defendant at the request of her husband. But the facts do not sustain this theory. There had been a note made by the same parties for the same amount discounted by the Loekport City Bank, and which was from time to time renewed, and which was held and owned by the last named bank, down to October ,1864. On the twelfth day of the month named, the Loekport ISTational Bank discounted the note upon which the plaintiff’s judgment was recovered, and the proceeds were applied in discharge of the indebtedness to the City Bank. But the transaction with the National Bank was the creation of a new debt to that corporation having no connection with the former debt to the City Bank. The ISTational Bank then became for the first time a creditor of Hawkins, and its rights and equities and those of its assignee must be adjusted in view of the circumstances then existing, ■ and they cannot have the benefit of any equities which might have existed in favor of the City Bank had the debt continued in that institution as it was in July, 1863. The plaintiff then claims under a condition and in virtue of a debt created subsequently to the grant which is sought to be impeached, and can only recover upon showing actual fraud. It is true the particular premises sought to be charged, were conveyed to the defendant in 1865, but they were so conveyed, in exchange for the lands conveyed to him in 1863, and her title depends entirely upon the validity of the first conveyance, and the plaintiff is not in a condition to assail that except for actual fraud.
I have labored under the same difficulty in ascertaining the facts and examining the case, that was encountered by the Supreme Court, and concur with Judge Mullin in condemning the manner in which this case was made, but I think I have after some effort got a right understanding of all the evidence. But lest I may have overlooked some fact in respect to the origin and history of the debt or the relation of the parties to each other, and the transactions detailed, I prefer to rest the decision upon the ground that every presumption of fraud as against creditors existing at the time of *351 the grant to the defendant, as well as to subsequent creditors, • is conclusively disproved, and that the referee erred in giving the plaintiff the benefit of the statutory presumption of fraud, arising from the fact that the conveyance was voluntary.
The order of the Supreme Court granting a new trial should be affirmed, and judgment absolute for the defendant with costs.
All concur.
Order affirmed, and judgment accordingly.