Catharine L. Herman, as Executrix, etc., Respondent, *v.* Charles H. Roberts, Appellant.

H., plaintiff's testator, being the owner of land upon which was a residence built for and used as a gentleman's country seat, obtained from defendant, by purchase and grant, a right of way from said land to a public highway across the farm of the latter, over a piece of land described. The premises of H. had no other connection with the highway than the way thus granted. The land described in the grant, over which the way was granted, was, at the time, rocky and uneven, not adapted to purposes of cultivation, or for a carriage-way, until prepared for that purpose. H. prepared a road-bed, constructed thereon a car-

riage-way, fences were built on both sides, with openings on either side, so that defendant might cross the road. Defendant thereafter used the road-way for carrying heavy loads of farm produce and utensils over it, thus injuring the road, and also placed stones thereon which obstructed the passage, and he threatened to continue such use whenever he deemed necessary. *Held,* that plaintiff was entitled to an injunction to restrain such improper use of the way; that the grant gave plaintiff, not only a right to an unobstructed passage at all times over the land marked out for the way, but also all such rights as were incident or necessary to such passage; that plaintiff thus acquired the right to enter upon the land and construct such a road as he desired, and to restrict such use of it by the owner of the servient tenement, as was inconsistent with the full and unrestricted enjoyment of his easement; that the full extent of the rights of the grantor was to enter upon the land and do such acts only as should not injure or impair the usefulness of the road so constructed, or its character as a carriage road for private use; also, that the grantee had a right, not only to a free passage over the traveled part, but also over the whole strip granted and enclosed as a way; and that the deposit of stones or other obstructions on any part of the enclosure, in such a way as to interrupt the enjoyment of the easement, was inconsistent with and an infringement upon the grantee's rights, and could properly be prevented by injunction. .

But, *held,* defendant was not precluded from the use of the roadway, by passing over or across it in such a manner as not materially to obstruct passage or injure the road-bed.

In considering the extent of the rights of the respective parties in the grant of a right of way, it is not proper to refer to the parol negotiations which preceded or accompanied its execution, but the language of the grant should be regarded, and when that is uncertain or ambiguous, the circumstances surrounding it, and the situation of the parties, with a view of arriving at the true intent of the parties.

(Argued December 11, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 1, 1888, which affirmed a judgment in favor of plaintiff, entered on the decision of the court on trial at Special Term.

This action was brought to restrain defendant from injuring, by alleged improper use, a carriage road which Philip Herman, the plaintiff's testator, had constructed over the lands of the defendant under the grant of the right of way from the defendant to the said Herman.

The grant was executed and delivered October 30, 1871. By it the defendant granted to Philip Herman a right of way "over the lands of the party of the first part, from the north line of the party of the second part to the public highway, leading from Lewisburgh to the old post road  *  *  *  on a line now staked out to be forty feet wide between the fences crossing the lands of the party of the first part;" defendant agreed to build one-half the fence and keep it in repair.

The case showed that, prior to the grant, Herman had a summer residence upon his premises. He wished to have a carriage road down a hillside across the defendant's farm to the Lewisburgh road. The defendant staked out such a line of road as he was willing to grant the right of way for, and thereupon the above grant was executed. It divided defendant's farm, leaving a lot of about two and a half acres upon the westerly side. The main portion of defendant's farm and all his buildings were upon the easterly side. Herman constructed a carriage road, grading, macadamizing and covering it with gravel, at an expense of $700, and maintained it in good condition down to the commencement of this action. He built a fence upon the westerly side, leaving a gateway in the fence upon the easterly side for the use of defendant. The defendant built a fence upon the easterly side of the road leaving a bar-way in it for his own use.

The court upon trial awarded a perpetual injunction enjoining him "from interfering in any way with the use and enjoyment of the roadway, and for using the same for farming or business purposes in such or any manner as to damage or in any wise injure the roadway, or road-bed as now constructed." Herman having died since the trial, his executrix was substituted as plaintiff.

Further facts appear in the opinion.

*Frank B. Lown* for appellant. The written instrument purporting to convey "a right of way over the lands of the party of the first part," did not give to Hermann the exclusive right of passage thereover, and did not debar the grantor from

going on it all times, and using it for all purposes, always not interfering with Hermann's free passage thereover. (Wash. on Easements, 188, 196; *Hudson* v. *Young*, 4 Lans. 67.) If, however, the court, in construing the rights of the parties is to go outside of the contract, and is to give Hermann something more than the "right of way" called for by the writing, then the trial judge committed error in excluding the testimony offered by the defendant, tending to show that the real agreement and understanding between the parties was as evidenced by their talk at the time of making the contract. (*Onthank* v. *L. S. & M. S. R. R. Co.*, 71 N. Y. 194; *Arms* v. *Arms*, 13 N. Y. S. R. 12; *Chapin* v. *Dobson*, 78 N. Y. 74; *Eighmie* v. *Taylor*, 98 id. 288.) The judgment cannot be sustained even in part, on the ground that the stone which fell in the roadway, or those which were temporarily placed on the sides of the roadway, constituted obstructions, for these acts, even if purposely done, would be mere trespasses, and an action in equity to enjoin the perpetrator would not lie. (*T. & B. R. R. Co.* v. *B. & H. T. & W. R. R. Co.*, 86 N. Y. 107.)

*J. Newton Fiero* for respondent. It is a fundamental principal in the construction of the terms of a grant that when its words are doubtful they are to be taken most strongly against the grantor. (*Kilmar* v. *Wilson*, 49 Barb. 88; *Bliss* v. *Greeley*, 45 N. Y. 674; *Atkins* v. *Boardman*, 2 Metc. 467; *Maxwell* v. *McAtee*, 9 B. Mon. 21; *Kaler* v. *Beaman*, 49 Me. 208.) Plaintiff can maintain this action to prevent unfair use of roadway so as to injure it or embarrass plaintiff. (Wash. on Easements, 188, 196; *Cowling* v. *Higinson*, 4 M. & M. 245; *Hemphill* v. *City of Boston*, 8 Cush. 195; *Amondson* v. *Severson*, 37 Ia. 605; *Bakeman* v. *Talbot*, 31 N. Y. 370; *Burnham* v. *Nevins*, 144 Mass. 92; *Outhank* v. *L. S. & M. S. R. R. Co.*, 71 N. Y. 194; *Underwood* v. *Carney*, 1 Cush. 291; *Dennis* v. *Sipperly*, 17 Hun, 69; *Olcott* v. *Thompson*, 59 N. H. 156.) The case demands the application of the maxim: *Sic utere tuo, et alienum non laedas.* (*Hay* v. *C. Co.*, 2 N. Y. 161; *Prentice* v. *Geiger*, 74 id. 345; *Van Pelt* v. *McGraw*, 4 id. 113.)

RUGER, Ch. J.    The evidence in the case was quite conflicting, and the principal dispute on the trial was whether the defendant had so used the plaintiff's right of way, as to injure and impair it, and require the making of repairs thereon to restore its usefulness.

The trial court found, as a matter of fact, " that the defendant has used said roadway for carrying produce and farming utensils upon and along the same *to the injury* and annoyance of plaintiff, and threatened to use the same whenever he deems necessary for such purposes and to use all force necessary for him to pass over such roadway in such manner."    The evidence fully supported this finding and tended to show that the defendant had cut up and injured the road-bed by drawing heavy loads over it, and placing stones thereon which obstructed the passage.

Under established rules this court is concluded by this finding and must assume that the defendant had used the roadway in such manner as to injure it and threatened a continuance of such use.

This fact clearly entitled the plaintiff to a remedy by injunction to restrain its improper use.    The plaintiff obtained this right of way by purchase and grant from the defendant and it consisted of a piece of land, " as now staked out," across defendant's farm running from the plaintiff's land to the public highway, a distance of about 900 feet and was plainly intended to facilitate the plaintiff's access to the public road from his residence.    This residence was built and used as a gentleman's country seat, and had no other connection with this public road than the way thus purchased.    The land through which the road was constructed was rocky and uneven and was not adapted to purposes of cultivation or for a carriage road until it had been prepared for that purpose by the plaintiff, which was done at considerable labor and expense.    No reservation of a right to use such road by the defendant was incorporated in the deed, and his right to such use depends altogether upon the extent of his interest as the owner of the soil in the servient estate.

No substantial difference exists between the parties as to the rules of law governing the rights of the respective parties in the premises, and the controversy seems to be reduced to the question whether the use proved, was materially injurious to the road. Both parties have referred, for the law governing the case, to the rule laid down by Washburn in his work on Easements (p. 188), stating that "all that the person having the easement can lawfully claim is the use of the surface for passing and repassing, with a right to enter upon and prepare it for that use," and that "the owner of the soil of a way, whether public or private, may make any and all uses to which the land can be applied and all profits which can be derived from it consistently with the enjoyment of the easement."

The conveyance of the right of way unquestionably gave the grantee not only a right to an unobstructed passage, at all times, over the defendant's land, but also all such rights as were incident or necessary to the enjoyment of such right of passage. (*Bliss* v. *Greeley*, 45 N. Y. 671; *Maxwell* v. *McAtee*, 9 B. Mon. 21.) The grantee thus acquired the right to enter upon the land and construct such a road-bed as he desired and to keep the same in repair. He could break up the soil, level irregularities, fill up depressions, blast rocks and not only remove impediments, but supply deficiencies in order to constitute a good road. He had a right to exclude strangers from its use, and to restrict such use of it by the owner of the servient tenement, as was inconsistent with the enjoyment of his easement. The owner of the soil was under no obligation to repair the road, as that duty belongs to the party for whose benefit it is constructed. (2 Washburn on Real Estate, 311; 2 Hilliard on Real Estate, 101.)

In considering the extent of the rights of the respective parties in the grant of a right of way it is not proper to refer to the parol negotiations which preceded its execution or the colloquium accompanying it (*Bayard* v. *Malcolm*, 1 Johns. 467; *Renard* v. *Sampson*, 12 N. Y. 561; *Long* v. *N. Y. C. R. R. Co.*, 50 N. Y. 76); but we are to regard the language of the grant and, when that is uncertain or ambiguous, the circumstances

surrounding it, and the situation of the parties with a view of arriving at the true intent of the parties, as was said in *Bakeman* v. *Talbot* (31 N. Y. 370.): "The doctrine that the facilities for passage, where a private right of way exists, are to be regulated by the nature of the case and the circumstances of the time and place, is very well settled by authority." In *Burnham* v. *Nevins* (144 Mass 92), Morton, C. J., says: "These general principles are that a man who owns land subject to an easement, has the right to use his land in any way not inconsistent with the easement, and that the extent of the easement claimed must be determined by the true construction of the grant or reservation by which it is created, aided by any circumstances surrounding the estate and the parties, which have a legitimate tendency to show the intention of the parties." (See, also, *Onthank* v. *L. S. & M. S. R. R. Co.* 71 N. Y. 194.)

Under these rules it is obvious that the rights of the owner of the easement are paramount to the extent of the grant, and those of the owner of the soil are subject to the exercise of such rights. It cannot be assumed, in the absence of any provisions looking thereto in the grant, that the grantor intended to reserve any use of the land which should limit or disturb the full and unrestricted enjoyment of the easement granted. The purpose contemplated by the grant was the creation of an easement for the plaintiff's use, and not the reservation to the owner of the use of his land. Every use by the owner was abandoned except such as might be made in a mode entirely consistent with the full and undisturbed enjoyment by the grantee of the easement. The idea of a joint use of the land by both parties, in the sense that a use by the grantee should at any time give way to a use by the grantor, is contrary to the plain meaning and intent of the grant. It cannot be supposed that the grantor when conveying a right of way over an impassable tract of land intended to restrict his grantee from changing its surface so as to make it passable and available for the purpose of a road, or that, after the road had been so constructed, he had the right to

enter upon the land and impair its usefulness, or impose upon
the grantee the duty of keeping such impaired road in repair
for the benefit of the grantor.    The full extent of the rights
of the grantor in the soil of the road was to enter thereon and
do such acts only as should not injure or impair the enjoy-
ment of the easement by the grantee, and when he went
beyond such use, he transcended the rights pertaining to his
character as the owner of the soil.    The general character of
these rights is familiar to all owners of land, because they are
common to all whose lands abut upon public roads, and they
are varied only by the character of the easements enjoyed, and
the terms of the grants under which they are possessed.
Unless, therefore, something can been found in the terms of
the grant which modifies the easement created, that must be held
to be the measure of the rights of the parties.    No inference
can be drawn from the present grant that it was intended that
the grantor should enjoy the unrestricted use of the road with
the privilege of so wearing and using it as to subject the grantee
to the labor and expense of keeping it in repair.  It is apparent,
from the character of the property affected and the use to be
made thereof, that the plaintiff expected to construct a carriage
road for access to and communication with his residence as a
gentleman's country seat. It could not have been contemplated
by the parties that such a road was to be used for farming pur-
poses, to draw heavy loads over, and cut it up by the use of the
various appliances needed for such purposes.  The land over
which the road was laid out had never before been so used and
the owner of the soil had theretofore obtained access to his land
from the public road by entering upon and traveling over it
in other places.    The land itself was of small compass and
little value, as it was hilly, rocky, sterile and unadapted to agri-
cultural uses, and it could not, under the circumstances, have
been intended that the road was to be built and used to any
considerable extent for farming purposes by either the grantor
or grantee.    The building of fences on both sides of the
road showed an intention to preserve it from indiscriminate
use and while the construction of a bar-way on either side

manifested a design that the defendant might thereby have access to his land and cross the road, it was not intended, we think, to give him liberty to so use the road as to impair or destroy its usefulness or character as a carriage road for private use. The right of way granted was to be forty feet wide and the grantor had a right thereunder, not only to a free passage over the traveled part, but also, to a free passage over such portion of the land, enclosed as a way, as he thought proper or necessary to use. (*Herrick* v. *Stover*, 5 Wend. 580; *Drake* v. *Rogers*, 3 Hill, 604; Wood's Nuisances, § 260.) The deposit of stone or other obstructions on such enclosed space in such a way as to interrupt the enjoyment of the easement, constituted an obstruction which was inconsistent with the rights possessed by the grantee, and could be properly prevented by injunction. The use of such land for agricultural purposes; the raising of crops or the deposit of materials thereon, except, perhaps, for temporary purposes, was clearly inconsistent with the rights conveyed by the grant.

It is difficult, if not impossible, to lay down a clear and definite line of use which shall enable the parties always to determine what may be considered a proper and reasonable use as distinguished from an unreasonable and improper one, and such questions must, of necessity, be usually left to the determination of a jury, or the trial court, as a question of fact. (*Bakeman* v. *Talbot*, 31 N. Y. 366; *Huson* v. *Young*, 4 Lans. 64; *Prentice* v. *Geiger*, 74 N. Y. 342.)

It is not supposed that it was the intention of the court below to wholly preclude the defendant from the use of the roadway by passing over or across it in such manner as should not materially obstruct passage, or injure the road-bed; but it was only intended to prevent an unreasonable use thereof which should sensibly impair its condition or render its use offensive and impracticable to the plaintiff and others having lawful occasion to pass over it.

We think the findings of the trial court are conclusive upon us as to the proper use of the road by the defendant, and that an injunction was properly awarded against him. Some

of the members of this court are, however, apprehensive that the order made by the court below is not sufficiently explicit and may be subject to misunderstanding and misconstruction. We have, therefore, thought best to change its form, so as to express more clearly the rights and duties of the respective parties. The words "wilfully or unreasonably" should be inserted after the word "interfering" in the sixth line of the order in the place of the words "in any way;" and also after the word "as" in the ninth line of said order.

With these modifications the judgment should be affirmed with costs.

All concur, ANDREWS, J., in result, except FINCH, J., dissenting.

Judgment accordingly.