JOHN WELLS, Respondent, *v.* RIAL TOLMAN, Appellant.

*Reservation of a right of way — available to a subsequent grantee, although not mentioned in his deed — the intention of the parties governs — costs.*

Daniel H. Huntington, who owned a farm of 100 acres, which included a wood lot of twenty acres, on the 1st of April, 1869, conveyed to William L. and Mathew P. Skellinger premises consisting of thirty-five acres, and which included the north half of the wood lot. This plot, to which the defendant Tolman acquired title from the Skellingers, was so situated as to cut off the south half of the wood lot from the rest of the Huntington farm.

Over a definite part of the premises so conveyed, known as the "east lot," Huntington had for some time maintained a private road which extended from the south half of the wood lot to the other portion of the farm of Huntington.

In the deed to the Skellingers there was the following clause: "Reserving the right of way over the east lot to and from the wood lot at all times when said lot is not sown with grain, and at all times when there is sleighing.

On the same day Huntington conveyed the whole farm to John Wells, excepting "that portion thereof this day deeded" to the Skellingers, but made no reservation in this deed of a right of way over the east lot. The defendant Tolman, a grantee of the Skellingers, by mense conveyances, shut up the private road, whereupon John Wells brought this action to establish the existence of the road.

*Held*, that both deeds must be construed together, and that it was clearly the intention of the parties that the reservation of a right of way over the east lot should exist for the benefit of the plaintiff;

That, as the owner of the dominant tenement, the plaintiff had a right to enter upon the road and make such repairs as were necessary for its reasonable use;

That the true construction of the reservation was that the plaintiff had a right to pass and repass over the road with teams, transporting products of the wood lot, at all times when the intervening land was not, in good faith, so sown with grain that its use for a roadway would result in substantial damages to the owner of the fee; and at all times when there was sleighing, whether or not the "east lot" was sown with grain;

That as the defendant had compelled the plaintiff to resort to litigation in order to secure his rights, the defendant was properly charged with costs.

*Semble*, that the defendant had no right to plow up the road and sow grain thereon.

APPEAL by the defendant, Rial Tolman, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 3d day of April, 1893, upon the decision of the court rendered after a trial at the Onondaga Special Term.

*Wilson, Kellogg & Wells*, for the appellant.

*Edward H. Burdick*, for the respondent.

MERWIN, J.:

This action was brought to establish the existence and determine the extent and character of a private road, across defendant's premises, leading from one portion of plaintiff's farm to another portion entirely disconnected. The premises of both parties were on the 1st of April, 1869, owned by and in possession of Daniel H. Huntington, and consisted of a farm of something over 100 acres, including a wood lot of about twenty acres. On the date named Huntington conveyed to William L. and Mathew P. Skellinger the premises now owned by defendant, being thirty-five acres, including the north half of the wood lot. This thirty-five acres was so situated as to cut off the south half of the wood lot from the remaining portion of the farm. In this deed was the following clause : "Reserving the right of way over the east lot to and from the wood lot at all times when said lot is not sown with grain, and at all times when there is sleighing." Huntington, on the same day, conveyed the balance of the farm, including the south half of the wood lot, to the plaintiff. In the deed to plaintiff the whole farm and wood lot were described, and then there was excepted therefrom "that portion thereof this day deeded" to the Skellingers. The south half of the wood lot so conveyed to the plaintiff was entirely surrounded by the land of others so that plaintiff could have no access to it except by passing over property that did not belong to him. The "east lot," referred to in the reservation in the deed to the Skellingers, was at that time a definite portion of the cleared land conveyed by the deed, and was separated from the balance of the cleared land by a fence, and was the lot directly between the plaintiff's cleared land and his half of the wood lot. Prior to these conveyances Huntington had for some time maintained a private road wholly upon his own premises, extending from the south half of the wood lot across the east lot to a portion of the land so conveyed to plaintiff where it connected through a barway with a lane on plaintiff's portion of the premises running to a public highway. This road had been used by Huntington, for some years prior to the deeds, for the purpose of drawing wood and stone from the wood lot. The south half of the wood lot was covered with timber, and there was also upon it a stone quarry that had been opened in 1846, and to which the road ran, and this quarry the plaintiff has

operated and taken out and drawn stone therefrom. The road ran from the wood lot in the most direct practicable route to the barway near the head of the lane.

It has continued to exist ever since the conveyances from Huntington, in the same location, connecting the same points, clearly defined and easy to be followed, and has been used by plaintiff whenever he had occasion to drive or pass back and forth between the lane and wood lot without let or hindrance, until in May or June, 1892, when the defendant, having sown a portion of the east lot to grain, built a fence across it that intersected the road, but left no gate or barway in the fence where it crossed the road. The defendant neglected and refused to take down the fence or remove the obstruction, after notice and request from the plaintiff so to do, and refused to recognize the right of the plaintiff to the roadway as used by him and his grantors for over forty years. This road was located and open and visible at the time of the conveyances by Huntington, and the same way with the identical track has been used by the plaintiff ever since. It is, as it runs, about forty-seven rods long and about eight feet wide.

The foregoing facts are substantially as found by the court upon sufficient evidence.

Very clearly the court did not err in holding that the plaintiff was entitled to the benefit of the reservation in the deed to the Skellingers, although it was not expressly mentioned in the deed to him. (Washb. on Easem. & Serv. [4th ed.] 40.) That was clearly the intention of the parties, and both deeds are to be construed together. (*Hills* v. *Miller*, 3 Paige, 254.) Although the language of the reservation was somewhat indefinite, there was a practical location that binds the parties. (*Onthank* v. *L. S. & M. S. R. R. Co.*, 71 N. Y. 194, 198.) The surrounding circumstances and the use before and after the deeds leave no doubt on the subject.

The court held that the plaintiff, as the owner of the dominant tenement, has the right to enter upon the roadway for the purpose of making and to make such repairs as, in view of the nature of the roadway and the surrounding circumstances, are necessary for the reasonable and convenient use thereof, and to keep the same in good condition for the convenient and practicable use of the same, doing no unnecessary injury to the defendant's surrounding lands or what-

ever may be growing thereon. There is no doubt about the general rule as to the right of repair. (*Herman* v. *Roberts*, 119 N. Y. 42; Washb. on Easem. 293.) We see no good reason why the general rule should not be applied to this case substantially as it has been done by the trial court. The road was intended to be permanent; its plain object would not otherwise be accomplished. Very evidently it needed repairs from time to time. The defendant claims that whenever he desired to sow to grain any portion of the east lot that included any part of the road he had a right to plow up the road. This had not been done until defendant did it in 1892, and a reasonable construction of the reservation would not allow it. If the design was to have a definite route and a permanent road that could be safely used at any time allowed under the grant, it would be inconsistent with such design to give the defendant the right, at any time he chose, to materially injure its usefulness. The use of the owner must be consistent with the easement. (*Herman* v. *Roberts*, 119 N. Y. 43.)

The defendant claims that the court improperly construed the reservation. Several findings of law on the subject are excepted to, the most important of which and the only one that need be particularly discussed, is the sixth, which is as follows: " That the true construction and meaning of the words of said reservation are, that the plaintiff has the right to pass and repass upon said roadway between the wood lot over the ' east lot ' to the barway at the head of the said lane, with teams, and to transport wood, stone and the products obtained from said wood lot, at all times when the intervening land is not in good faith so sown with grain that the use thereof for a roadway would result in substantial injury to the owner of the fee, and at all times when there is sleighing whether or not said ' east lot ' is sown with grain." It apparently was contended by the defendant at the trial that whenever he sowed to grain any part of the east lot that included any part of the road, he could entirely close the road until the crop was off. The plaintiff claimed that by reason of his long user of the road at all times without let or hindrance, although on some occasions the land was sown to grain, he had a right to pass over the route although the lot was sown to grain. A construction of the reservation was sought on the one hand that would put it in the power of the owner of the lot at his

FOURTH DEPARTMENT, JULY TERM, 1895. [Vol. 88.

will, by the use for.grain of an insignificant part of the lot, to block the use of the entire road, and evidence was given tending to show that the sowing in 1892 was not in good faith, but for the purpose of stopping the drawing of stone by plaintiff from his quarry on the wood lot. On the other hand, a construction was sought that might in effect do away with the evident design of the reservation to give protection to the owner when the lot was used in a particular way. At the time of the deed the "east lot" was a definite inclosure, the road was entirely on it, and there was no fence that crossed it. The defendant in 1892 divided the lot with a fence that crossed the road, and used for grain the portion next the wood lot. It is not to be supposed that the parties intended that the owner of the lot, by the use of only a portion and for ulterior purposes, could get the benefit of the reservation when in no substantial need of it for the protection of his grain. The easement ran with the land and was perpetual, and its future usefulness must be supposed to have been in contemplation of the parties. Having this situation in view and the practical use that had without objection been given to the road up to 1892, we fail to find any good reason for the defendant to complain of the construction given by the court to the reservation. Provision was made that any fence across the roadway erected by defendant to protect his crops should have a convenient gate or barway at the crossing, and that plaintiff should close such gate or bars promptly after using the same.

It is further claimed by the defendant that costs should not have been given against him. They were given upon the ground that the action of the defendant made litigation necessary in order to protect the rights of the plaintiff. Upon the trial, as appears from the record, the defendant claimed that the plaintiff had no right of way at all.

It also appeared that defendant claimed that the plaintiff had no right to draw stone over the road. He claimed the right to plow it up whenever he sowed with grain. The costs were in the discretion of the court. The character of the litigation was within the particular observation of the trial court. We find no sufficient ground for saying that the discretion of the court on the subject was improperly exercised.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.