JOHN WELLS, Respondent, v. RIAL TOLMAN, Appellant.

EASEMENT — RESERVATION OF QUALIFIED RIGHT OF WAY.  A deed of
a portion of the grantor's farm reserved " the right of way over the east
lot to and from the wood lot at all times when said lot is not sown with
grain, and at all times when there is sleighing." *Held*, that this sub-
jected the granted land to merely a qualified and limited right of way in
favor of the grantor's remaining land, consistent with the grantee's right
to cultivate the soil within the limits of the way as theretofore used, and
did not justify a judgment which gave the easement the effect of a gen-
eral right to use the way at all times, even when sown to grain, and to
enter and repair the way with any desired material.

*Wells* v. *Tolman*, 88 Hun, 438, reversed.

(Argued June 15, 1898; decided October 4, 1898.)

APPEAL from a judgment of the late General Term of
the Supreme Court in the fourth judicial department, entered
July 9, 1895, affirming a judgment in favor of plaintiff
entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Raymond Cobb* for appellant.   The court erred in its con-
clusion of law, wherein it says that plaintiff is entitled to
judgment and to the costs of this action.   (*Law* v. *McDonald*,
9 Hun, 23; *Caldwell* v. *Leiber*, 7 Paige, 483; *Crippen* v.
*Heermance*, 9 Paige, 211; *Barker* v. *White*, 3 Keyes, 617.)

*Edward H. Burdick* for respondent. The right of way and easement reserved by Huntington in his deed to Skellinger passed to the plaintiff by the conveyance to him of the remainder of the farm as an appurtenant to the land. (*Hills* v. *Miller*, 3 Paige, 254.) The right of way reserved by Huntington referred to an open and visible road, and was fixed by use and practical location, and was and is now the roadway defined and described in the judgment. (*Bannon* v. *Angier*, 2 Allen, 128; Washb. on Ease. [4th ed.] 265; *Onthank* v. *L. S. & M. S. R. R. Co.*, 71 N. Y. 194; *Crocker* v. *Crocker*, 5 Hun, 587.) The plaintiff has the right to enter upon and keep the roadway in repair and proper condition for his use, and cannot be excluded therefrom by the acts of the defendant in cultivating his land, nor by erecting obstructions across it. (Washb. on Ease. [4th ed.] 285, 293; *Herman* v. *Roberts*, 119 N. Y. 37; *Gerrad* v. *Cooke*, 2 Bos. & P. [N. R.] 109; *Doane* v. *Badger*, 12 Mass. 65; *Atkins* v. *Bordman*, 2 Mer. 457; *McMillan* v. *Cronin*, 75 N. Y. 474; 7 Barb. 309; 7 Barb. 80.) The defendant has not the right to plow up and injure the roadway, thus compelling the plaintiff to make unnecessary repairs whenever he exercised his right of way, at a very considerable expenditure of time and money, and he was thereupon entitled to the injunction restraining the defendant from interfering with the roadway and compelling him to remove obstructions. (*Herman* v. *Roberts*, 119 N. Y. 37.) The plaintiff is clearly entitled to the costs of this action. (*Dilts* v. *Sweet*, 66 Hun, 629; 21 N. Y. Supp. 57, 58.)

O'BRIEN, J. In this action the plaintiff sought to establish, through the decree of a court of equity, the existence of an easement or right of way over the defendant's land, and to procure an adjudication as to the nature, character and extent of that right

The lands of both parties were originally, and up to the month of April, 1869, one farm of about one hundred acres, including a wood lot of about twenty acres. On that date the then owner of the whole property conveyed the premises now

owned by the defendant, consisting of about thirty-five acres, including the north half of the wood lot. This portion of the farm thus became separated from the rest, and the wood lot was divided into what is known in the case as the north half and the south half. Aside from the wood lot this conveyance embraced about twenty-five acres of the original farm, and this part of the land conveyed is known in the case as the east lot. On the same day the then owner conveyed to the plaintiff the remainder of the property, including the south half of the wood lot. In this division of the farm the south half of the wood lot conveyed to the plaintiff, consisting of about ten acres, was entirely detached from the rest of the plaintiff's land, and could be reached only by passing over the thirty-five acres which the defendant now owns. Before the sale and division of the farm, the then owner used the whole property and had access to the wood lot by passing over the thirty-five acres or some part of it. The road over which he drove in going to and returning from the wood lot thus became more or less defined, so that at the time of the sale and division it could be traced and identified.

Since the sale of the twenty-five acres now owned by the defendant isolated the south half of the wood lot from the rest of the farm, the owner in making the conveyance under which the defendant has acquired his title inserted therein the following reservation: "Reserving the right of way over the east lot to and from the wood lot at all times when said lot is not sown with grain, and at all times when there is sleighing."

The original owner thus retained the right to have access to the south half of the wood lot by means of this reservation, and this right passed to the plaintiff when the rest of the farm and wood lot was conveyed to him.

The construction and true meaning of the reservation are the only questions involved in this appeal. The "right of way" referred to was the track then existing over which the original owner passed, and so the courts below have held. The "east lot" was the twenty-five acres conveyed to the defendant's

grantors with the ten acres comprising the north half of the
wood lot. The time when the right of passage was to be
exercised was at *all times when there was sleighing*, that is,
when there was snow or ice upon the road or way theretofore
fixed and identified by practical location, and at all other times
when the same way or track was not "*sown with grain.*"

The defendant's farm of twenty-five acres was subjected
by the grant to an easement in favor of the owner of the
remaining lands, but the right of way was qualified and lim-
ited by restrictions as to the time and manner of enjoyment.
It could be used at all times during sleighing, and at other
times when the land was not sown to grain. The purpose was
to secure access to a wood lot, and that was sufficiently attained
by limiting the time of use and enjoyment to the winter
months, or, at all events, to that part of the year when the
land was not under cultivation for grain crops. It is perfectly
evident that the parties to the deed containing the reservation
of the easement intended that the grantee of the twenty-five
acres should have the right to plow and sow the land
embraced within the limits of the way as theretofore used, in
the regular and ordinary way of husbandry, and that during the
time it was sown to grain the right of passage was suspended.
The language of the restriction is not open to any construc-
tion that would deprive the defendant of the use of his land
for the ordinary purposes of husbandry, and there is no reason
apparent in the case why the courts, by construction, should
convert an easement, carefully qualified and limited by clear
language, into a general and unrestricted right of way. (*Her-
man* v. *Roberts* 119 N. Y. 37; *Mansfield* v. *Shepard,* 134
Mass. 520.)

Upon a careful examination of the record it will be seen
that there is no allegation in the complaint, or finding of fact,
that the defendant ever refused to allow the plaintiff to pass
over the land at the times mentioned in the grant. The plain-
tiff does not allege, and it has not been found, that the defend-
ant in any way interfered with the use of the right of way
as reserved, that is to say, during sleighing, or when the land

was not sown to grain. What the plaintiff really claimed and sought to establish in this action was something more extensive than can be deduced from the reservation in the grant upon which the easement depends. In other words, he claimed the general and unrestricted right of way by prescription, or, in the language of the complaint, the right of passage " over and upon said right of way and easement with his teams and otherwise as he saw fit and proper, at all times and and in all seasons, irrespective of crops, snow or otherwise." He also claimed a right of way by necessity, but he failed to allege, and the record is silent with respect to any act on the part of the defendant in violation of the reservation in the deed.

The trial court held that the plaintiff was not entitled to a right of way by prescription or necessity, but confined the plaintiff to such rights or easements in the defendant's lands as were supposed to be reserved in the grant already referred to. But the courts below have apparently given to this reservation a construction which secures to the plaintiff all that he asked by prescription or necessity. This is not so apparent from the opinion as from the findings and judgment. It will be seen that at least two points are decided by the judgment which virtually confer upon the plaintiff the right to use the easement at all times, and thus converts what was a qualified and limited right of way into a general one, and practically nullifies the restrictions as to user contained in the deed creating the easement.

(1) It has been held that the restriction against the use of the easement when the east lot is sown to grain applies only when the *whole lot* is devoted to that purpose. This means that if the defendant uses any part of the twenty-five acres for pasture, meadow or root crops the easement becomes general for all purposes, and the exception in regard to the use when the land is sown to grain has no application. In other words, unless the defendant devotes every foot of his small farm to grain crops he must lose the benefit of the exception. This is an extreme, and, as I think, unwarranted construction of the language of the deed, and does violence to the intention

of the parties. The original owner divided his farm and sold twenty-five acres of it to the defendant's grantors, making the reservation in favor of what remained of his estate of the right of way to the wood lot in the restrictive language of the grant. The part thus conveyed was a small farm near the limits of a large city. It cannot be supposed that the parties had in mind, when reserving the right of way, or contemplated such an event, as the sowing of every foot of this small farm of twenty-five acres to grain. It might as well be urged that the language of the reservation with respect to the use of the easement during the winter months referred to a time when the whole twenty-five acres were covered with snow or ice, whereas these words obviously refer to times when there was sleighing on the beaten track, whatever conditions existed on the rest of the lot. So also the restriction implied in the reservation against the use of the easement when the lot was sown with grain, refers to the land embraced within the limits of the road, as fixed and defined by previous use. Any other construction renders the language meaningless, and the whole provision, so far as it attempted to restrict the use of the easement to certain limits or seasons, absurd. The true meaning and construction of the deed is that the defendant has the right to cultivate all of his land, including the beaten track to the wood lot, and when acting reasonably, according to the regular course of good husbandry, he shall sow that part of the lot embraced in the way, or any substantial part of it, to grain, the plaintiff's right to use the easement is suspended during the time that the grain crop is upon the ground, or capable of being damaged by driving over it.

When the parties to the deed created the easement it was clearly intended that the owner of the twenty-five acres should have the right to use all the land for agricultural purposes, and hence the right of way was so limited and restricted as to secure that end. The right of way to a wood lot is generally important only in the winter season, and it is capable of use in such a way that the owners of the soil and the ease-

81

ment may enjoy the property which each has in the soil; and a reasonable and limited use of a way, such as the deed in this case grants, is not inconsistent with the right to cultivate the land.

· (2) The judgment also confers upon the plaintiff the right to enter upon the defendant's land and repair the way at such times, and with such materials, as he may desire. He may use stone, gravel or timber, and make just as good a road as his interests or his fancy may dictate. Of course if he may do that, it necessarily excludes the right of the defendant to cultivate his land, or at least that part of it embraced within the limits of the way for sowing grain, or anything else. It converts what was originally a beaten track over defendant's land into a general highway for the benefit of the plaintiff, without compensation of any kind, and works a radical change in the agreement of the parties as evidenced by the deed under which the easement exists in any form. I do not think that this is a fair construction of the conveyance. The right of the plaintiff to use the easement during sleighing and when the land is not sown to grain, implies the right to make such repairs as may, under all the circumstances, be reasonable. But such repairs must be consistent with the right of the defendant to cultivate the land, and any change in the surface of the soil that interferes materially with that right is a violation of the spirit and terms of the conveyance.

The repairs which an easement of such a special and limited character ordinarily needs are furnished by the use of the soil itself, without importing into it any foreign substance or material.

The real origin of this controversy is not very difficult to perceive. It seems that when the reservation of the easement was made in the deed, the purpose which the parties had in view was the use of the wood lot as such. Although there was then a stone quarry upon it, no particular use had yet been made of it, and it evidently was not, as subsequently developed, considered in shaping the nature or extent of the easement. But since that time what was then a mere wood

lot has become a valuable stone quarry, and the right of way that answered all the plaintiff's purposes thirty years ago does not answer them now. Hence the cause of action stated in the complaint is based, not upon any violation of the terms of the deed, but upon a claim of a general right of way by prescription or necessity. Inasmuch as the courts below have denied the plaintiff's claim to a right of way based upon prescription or necessity, it is somewhat difficult to see why that result did not end the controversy. When the plaintiff was allowed, after failing to establish the substantial allegations of his complaint, to fall back upon a claim under the deed that had never been the subject of controversy, and to recover a judgment, with costs, against the defendant, it was certainly taking a very liberal and favorable view of his rights. As already observed, the plaintiff made no claim that the defendant ever made any objection to his use of the easement during sleighing, or when the land was not sown to grain, and there is no finding in the record that he did. The plaintiff alleges, and it is found, that up to the 30th of May, 1892, he used said right of way for all purposes as he might wish, without hindrance or interruption, and the only act charged against the defendant in violation of the plaintiff's rights is that on said 30th day of May, 1892, the defendant forbade him from further using the way, and erected a fence across the same. But it appears that at this date the defendant had plowed the land and had sown the same to buckwheat, and if the language of the deed means anything, he had the right to do that.

The defendant also built a temporary fence across the roadway for the purpose of keeping his own cattle in an adjoining pasture, out of the grain, and at the same time offered to permit the plaintiff to cross and recross his lands to the wood lot by another route, shorter, but with slightly steeper grades; but he refused to recognize the right of the plaintiff to cross his land when it was sown with grain, and the plaintiff refused to accept anything else but a general and unrestricted use of the way at all times.

This is the real and only controversy between the parties,

and if I am right in the construction of the language of the deed creating the easement it is obvious that the plaintiff had no standing in a court of equity. In brief, the case is this, the defendant refused to allow the plaintiff to cross his land when it was sown with grain, offering him a passage at another place not sown with grain. The plaintiff refused this offer, and insisted upon his right to pass over defendant's land whether it was sown with grain or not. He then brought this action in equity, basing his claim upon prescription and the doctrine of necessity, both of which claims the court rejected, but, at the same time, awarded to him all he asked, with costs, under the construction of the deed which has been already referred to.

The defendant is still the general owner of every foot of the twenty-five acres, and is vested with every right and incident of ownership not expressly reserved in the deed from which his title is derived. The only reservation in that deed, as we have seen, is the privilege of passing over the land to the wood lot at certain times, namely, during the season of sleighing, and when the land covered by the easement was not sown to grain. The judgment in this case awards to the plaintiff much more extensive rights, and correspondingly curtails the rights of the defendant as general owner. It is quite as important that the rights of the latter should be defined and respected as those of the plaintiff in the easement.

The right of the defendant to cultivate all the land was not curtailed by the reservation in the deed, but, on the contrary, was expressly recognized, and he may exercise that right in a reasonable and proper way, in the regular and ordinary way of good husbandry, but not for any captious end, or for the purpose of defeating the plaintiff's use of the easement, as described in the deed. The plaintiff may repair the way in a manner suitable to the limited character of the easement, but not so as to interfere materially with the right of the defendant to use and cultivate the land as part of his farm.

In these particulars the judgment should be modified, without costs to either party in this court or the courts below, and, as so modified, affirmed. In case this result should not receive

the assent of the court, then the judgment should be reversed and a new trial granted, costs to abide the final award of costs in the case.

Judgment reversed and a new trial ordered, costs to abide final award of costs in the case.

All concur, except Bartlett, J., not voting, and Martin and Vann, JJ., not sitting.